# EXHIBIT B

State Court of Fulton County
**E-FILED**
21EV005070
8/25/2021 3:24 PM
Christopher G. Scott, Clerk
Civil Division

### IN THE STATE COURT OF FULTON COUNTY
### STATE OF GEORIGA

| | |
|---|---|
| ROBERT LANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION FILE NO.: |
| v. | ) |
| | ) |
| SIG SAUER INC. | ) |
| | ) |
| Defendant. | ) |

### COMPLAINT

Plaintiff Robert Lang, by counsel and for his Complaint seeking judgment against Defendant SIG SAUER, Inc., alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Robert Lang is a citizen and resident of the State of Georgia and resides at 635 Kingsport Drive, Roswell, Fulton County, Georgia 30076.

2.

Defendant SIG SAUER, Inc., is a foreign corporation organized and existing under the laws of the State of Deleware, with its principal office located at 72 Pease Boulevard, Newington, NH 03801.  Defendant SIG SAUER, Inc., may be served with process through its registered agent, to wit: Cogency Global, Inc., 63 Pleasant Street, Concord, NH 03301. Defendant SIG SAUER, Inc., is subject to the venue and jurisdiction of the Court pursuant to Georgia's Long-Arm Statute.

3.

On December 11, 2018, Plaintiff Robert Lang was injured at his home in Roswell, Georgia, when his SIG SAUER P320 spontaneously fired without a trigger pull.

Case 1:21-cv-04196-CAP   Document 1-2   Filed 10/11/21   Page 3 of 16

4.

The claims asserted by the Plaintiff against the Defendant for civil damages associated with the injuries arose out of the above-described incident.

5.

Defendant SIG SAUER, Inc., (sometimes hereinafter "SIG") designs and manufactures firearms and rifles for military and commercial markets in Georgia, throughout the United States, and internationally. Production occurs in the United States before materials are marketed and sold directly and by dealers.

6.

Defendant SIG SAUER, Inc., directly or by/through its agents, servants or employees, transacts business in the State of Georgia, contracts to supply goods in the State of Georgia, caused tortious injury by an act or omission in this State, caused tortious injury in this State by an act or omission outside of this State while regularly doing or soliciting business or engaging in any other persistent course of conduct that derived substantial revenue from goods used or consmed or services rendered in this State. The tortious injury occurring in this State arose out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revuie within this State, or caused injury in this State by breach of express or implied warranties made in the sale of goods outside this State when the seller knew persons such as Plaintiff would use, consume or be affected by the goods in this State while also regularly doing or soliciting business or engaging in any other persistent course of conduct in this State such that Defendant has minimum contacts with the State of Georgia and is thus subject to the jurisdiction of this Court.

## SUMMARY AND NATURE OF ACTION

7.

This action seeks actual, compensatory and punitive damages and equitable relief relating to Defendant SIG SAUER, Inc.'s negligence and defective design of the P320 pistol. Said pistol has been known to fire spontaneously without the trigger being pulled when in use by both law enforcement and civilians.

8.

Having been around firearms his entire life, paramount to Mr. Lang was the safety of his young family, and proficiency with handguns and rifles has been a part of his life since he was a teenager. He had taken lessons, been a longtime member of the Sharpshooters Gun Club, and had spent hundreds of hours behind the trigger with friends and his father.

9.

After researching which handgun to purchase, Mr. Lang was convinced SIG SAUER was an elite designer and manufacturer of firearms, and in March 2018 bought a P320, Serial No. 58C206002. Along with the gun, he also purchased an inside the waistband (IWB) full retention holster – more specifically, the Blackpoint RH Dual Point SIG SAUER P320 holster. The full retention holster was intended as an added safety measure with the body of the gun and trigger completely covered when the weapon is holstered.

10.

Mr. Lang held a Georgia Weapons Carry License, and safety was always his priority. He wore his gun on his belt at his right hipbone, slightly towards his back at "4 o'clock." Every evening when he arrived home, after greeting his wife and young son, he would make sure to safely put his pistol away on the top shelf of a closet by the living room.

11.

On December 11, 2018, when removing his handgun, Mr. Lang followed the same safety protocol he had been taught by instructors and as detailed by Blackpoint. He loosened his belt slightly to ease the pressure on the gun and holster.

12.

Next, he placed his hand onto the holster to verify the gun was secured, and before he could even lift the gun off of his belt, the weapon discharged. The boom of the weapon firing had both his wife and son screaming.

13.

The bullet tore through his right upper thigh and ripped out just above his knee. Police and EMS quickly arrived on the scene after Mr. Lang's wife called 911, and he was then transported to an area hospital.

14.

The handgun and holster both verify the gun spontaneously fired. The bullet pierced the tip of the holster, confirming the gun remained fully seated and the trigger could not have been reached by Plaintiff. With the handgun secured in the holster, the next round in the chamber was unable to cycle through and the shell casing was damaged. The trajectory of the bullet further establishes the holster was still clipped to Plaintiff's hip when the gun discharged. Simply stated, the gun fired and caused Mr. Lang serious and permanent injuries without him ever touching the trigger.

15.

Mr. Lang brings causes of action under Georgia law for negligence, strict products liability, breach of express warranty, breach of implied warranty, negligent infliction of emotional distress, and punitive damages against Defendnat SIG. Defendant SIG had prior knowledge that the P320

was capable of firing by itself without the trigger being pulled due to a defect inherent in the manufacture and/or design of the gun.

## ALLEGATIONS

16.

Plaintiff re-affirms and re-alleges all the preceding paragraphs of this Complaint as if fully set forth herein.

17.

The incident has resulted in substantial physical harm and related trauma to Plaintiff Robert Lang.

18.

Defendant's P320 model should not have discharged without the trigger being pulled. In its "Safety Without Compromise" marketing materials for the P320, SIG states:

> *We've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to.*

19.

In other marketing material, in a section called "Striker Safety," defendant SIG further states that the striker safety "[p]revents the striker from being released unless the trigger is pulled."

20.

At the same time, SIG contradictorily stated in the original owner's manual for the P320 that the weapon could fire if dropped without the trigger being pulled if a round were "chambered" i.e., inside the firing chamber of the weapon's slide.

21.

The P320 is the first striker-fired pistol SIG has manufactured.

22.

While competing for a $580,000,000 contract to supply the United States Army with a new service pistol in 2016, SIG's prototype P320s exhibited nearly 200 malfunctions during Army testing. The Army demanded that SIG fix all problems associated with the prototypes.

23.

On May 10, 2017, after SIG was awarded the contract, the United States Army submitted an Engineering Change Proposal for the prototype P320. SIG complied with the change proposal and made all requested changes to the Army version of the weapon.

24.

However, SIG left approximately 500,000 P320s in circulation amongst law enforcement and civilians.

25.

The SIG P320 was originally designed and manufactured in or about 2014, or earlier. The original design and manufacture of the P320 rendered the weapon unreasonably dangerous for its intended uses, and for any foreseeable uses and accidents involving its intended uses, including any normal carrying, holstering, un-holstering, or rough handling in any altercation or combat.

26.

In 2018, SIG shipped approximately 9,000 P320s to the Department of Homeland Security. At that time, SIG knew, or should have known, that the weapon was defective in its design and unreasonably dangerous for its ordinary uses, intended uses, and all other foreseeable uses and accidental discharges that could occur in the ordinary course of using the weapon.

27.

Before it shipped these weapons, SIG was aware of defective, unintentional discharges of the P320.

28.

SIG SAUER, Inc., is currently defending multiple lawsuits filed throughout the United States wherein it is alleged that SIG's P320 spontaneously discharged without the trigger being pulled when the weapon was either dropped, holstered or simply handled.

## COUNT I
## NEGLIGENCE

29.

Plaintiff re-affirms and re-alleges all the preceding paragraphs of this Complaint as if fully set forth herein.

30.

At all relevant times, SIG owed Plaintiff the duty - before selling the gun and placing it into the stream of Commerce - to design the P320 weapon in such a manner and with the exercise of reasonable care, so as to prevent it from firing without a trigger pull.

31.

At all relevant times, SIG owed Plaintiff the duty to manufacture, assemble, inspect and/or test its P320s in such a manner, and with the exercise of reasonable care, before selling the gun and placing it into the stream of commerce, so as to prevent it from firing without a trigger pull.

32.

At all relevant times, SIG owed a duty to unambiguously warn consumers and/or intended users (including Plaintiff) of the P320 of known or suspected defects that rendered the gun unreasonably dangerous to handle or use. SIG knew or had reason to know that the P320 posed an unreasonable risk of harm by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, industry publications and research, and other sources of information.

33.

Defendant SIG breached the above-cited duties in various ways, including but not limited

to, one or more of the following negligent acts:

a) By failing to use due care in designing and manufacturing the P320 so as to prevent uncommanded discharges;

b) By failing to use due care in designing and manufacturing the P320's internal components, including its sear, and by omitting a mechanical disconnect switch, so as to prevent uncommanded discharges; and

c) By failing to issue a mandatory recall of the P320 as SIG had done in the past with other defective products.

34.

At all relevant times, Defendant SIG had a duty to warn consumers and/or intended users (including Plaintiff) of the P320 of known or suspected defects that rendered the gun unreasonably dangerous to handle or use. SIG knew or had reason to know that the P320 posed an unreasonable risk of harm by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, industry publications and research, and other sources of information.

35.

SIG breached the above-cited duties in various ways, including but not limited to, one or more of the following negligent acts:

a) By failing to use due care in designing and manufacturing the P320 so as to prevent uncommanded discharges;

b) By failing to use due care in designing and manufacturing the P320's internal components, including its sear, and by omitting a mechanical disconnect switch, so as to prevent unintended discharges;

c) By failing to issue a mandatory recall of the P320 as SIG had done in the past with other defective products;

d) By failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge spontaneously as described above;

e) By negligently failing to unambiguously warn purchasers and end users of the gun of said defective, hazardous and unreasonably dangerous conditions relating to its design and manufacture, which it knew or should have known about through the exercise of ordinary care;

f) By failing to discover the defective conditions relating to the gun's propensity to randomly discharge while in the possession of SIG, and during which times employees, servants or agents of SIG had an opportunity to inspect, service and work on the gun.

SIG knew, or should have known, that exposing users to the dangerous and defective and hazardous conditions existing in the gun would or could give rise to serious bodily injuries or death to such users.

36.

The gun's defective condition is not visible and therefore users are not capable of realizing the potential danger and could not have discovered the dangerous condition even upon performing a reasonable inspection of the same.

37.

Defendant's negligence as alleged in this Count directly and proximately caused the December 11, 2018 un-intended discharge of Plaintiff's weapon and the resulting injuries.

38.

As a direct and proximate result of the breaches of duty by Defendant SIG, Plaintiff suffered injuries and damages including loss of earnings, medical and other necessary expenses, mental and physical pain and suffering due to the injuries to his body and nervous system, personal inconvenience, plus an inability to lead a normal life.  These personal injuries are permanent and,

in the future, Plaintiff may suffer loss of earnings, loss of earning capacity, and additional medical and other necessary expenses, personal inconvenience, mental and physical pain and suffering, and an inability to lead a normal life.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

39.

Plaintiff re-affirms and re-alleges all the preceding paragraphs of this Complaint as if fully set forth herein.

40.

At all relevant times, SIG was in the business of marketing, selling, and distributing weapons, including Plaintiff's P320 pistol.

41.

Defendant knew of the purposes for which the gun was used and impliedly warranted it to be of merchantable quality, safe, and fit for such purposes.

42.

At all relevant times, Plaintiff used the gun in its intended manner and for its intended purpose and reasonably relied on the skill, judgment and implied warranty of SIG.

43.

SIG breached the above-referenced implied warranties as to the gun because, at the time it left SIG's possession, it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended due to SIG:

a) Failing to use due care in designing and manufacturing the P320's internal components and by omitting a mechanical disconnect switch to prevent un-intended discharge;

b) Failing to issue a mandatory recall of the P320 as SIG had done in the past with other defective products;

c) Failing to make reasonable tests and/or inspections to discover the potentially dangerous conditions relating to the gun's propensity to discharge spontaneously;

d) Negligently failing to unambiguously warn purchasers/users of the gun of said faulty conditions relating to its design and manufacture;

e) Failing to discover the potentially dangerous conditions relating to the gun's propensity to spontaneously discharge while in the possession of SIG, and during which times employees, servants or agents of SIG had an opportunity to inspect, service and work on the gun.

44.

Plaintiff, as a purchaser of the subject weapon, was a person who would foreseeably be injured by SIG breaching the implied warranty referenced in this Count and SIG's breach of the warranty of merchantability as alleged herein directly and proximately caused the subject incident on December 11, 2018 and the resulting injuries to Plaintiff.

45.

As a direct and proximate result of the breaches of duty by Defendant SIG, Plaintiff suffered injuries and damages including loss of earnings, medical and other necessary expenses, mental and physical pain and suffering due to the injuries to his body and nervous system, personal inconvenience, plus an inability to lead a normal life.  These personal injuries are permanent and, in the future, Plaintiff may suffer loss of earnings, loss of earning capacity, and additional medical and other necessary expenses, personal inconvenience, mental and physical pain and suffering, and an inability to lead a normal life.

### COUNT III
### STRICT LIABILITY

46.

Plaintiff re-affirms and re-alleges all the preceding paragraphs of this Complaint as if fully set forth herein.

47.

At all times material hereto, SIG was in the business of marketing, selling, and distributing weapons, including the gun involved in the subject incident. Upon information and belief, Defendant knew or had reason to know the gun would be situated in holsters that would need to be removed from a user's belt holster at the time they sold the gun, and that the user was in fact relying on SIG's skill, judgment, and implied warranty of the gun's fitness for that particular purpose without firing.

48.

Accordingly, SIG impliedly warranted that the gun was suitable for the particular purpose of being situated within a holster that would need to be removed from a user's belt from time to time and was free from any design or manufacturing defect.

49.

At all relevant times, Plaintiff used the gun in its intended manner and for its intended purpose and reasonably relied on the implied warranty of SIG in using and handling the gun and its SIG-compatible holster.

50.

The subject weapon was not merchantable and reasonably suited for the use intended, and its condition when sold was the proximate cause of the damages sustained by Plaintiff. As a result, Defendant SIG is strictly liable in tort pursuant to O.C.G.A. § 51-1-11 (b)(1).

51.

As a direct and proximate result of the breaches of duty by Defendant SIG, Plaintiff suffered injuries and damages including loss of earnings, medical and other necessary expenses, mental and physical pain and suffering due to the injuries to his body and nervous system, personal inconvenience, plus an inability to lead a normal life.  These personal injuries are permanent and, in the future, Plaintiff may suffer loss of earnings, loss of earning capacity, and additional medical

and other necessary expenses, personal inconvenience, mental and physical pain and suffering, and an inability to lead a normal life.

## COUNT IV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

52.

Plaintiff re-affirms and re-alleges all the preceding paragraphs of this Complaint as if fully set forth herein.

53.

By its actions, SIG knew, or should have known, that the design and/or manufacturing defect in the gun rendered it capable of discharging without the trigger being pulled. Nevertheless, the P320 was marketed to Plaintiff and the general public as safe.

54.

SIG's conduct created an unreasonable risk of causing the plaintiff emotional distress which was foreseeable.

55.

SIG's conduct was the direct and proximate cause of Plaintiff's distress.

56.

The trigger was not pulled by Plaintiff, yet the weapon still fired and shot him in the leg.

57.

As a direct and proximate result of the breaches of duty by Defendant SIG, Plaintiff suffered injuries and damages including loss of earnings, medical and other necessary expenses, mental and physical pain and suffering due to the injuries to his body and nervous system, personal inconvenience, plus an inability to lead a normal life. These personal injuries are permanent and, in the future, Plaintiff may suffer loss of earnings, loss of earning capacity, and additional medical and other necessary expenses, personal inconvenience, mental and physical pain and suffering, and an inability to lead a normal life.

## COUNT V
## PUNITIVE DAMAGES

58.

Plaintiff re-affirms and re-alleges all the preceding paragraphs of this Complaint as if fully set forth herein.

59.

For some time prior to the incident involving Mr. Lang's P320, Defendant SIG was aware that its P320 handguns contained a defect that could cause them to fire unexpectedly, without the user even touching the trigger.

60.

Despite this knowledge, Defendant SIG failed to remedy the defect in the P320 handgun and allowed it to enter the stream of commerce. Moreover, SIG SAUER, Inc., has failed to take steps to warn the public, including Plaintiff, of the dangerous defect and/or issue a recall for the P320. Instead, Defendant SIG SAUER has intentionally concealed this information.

61.

In light of its prior knowledge and its subsequent actions, Defendant SIG SAUER, Inc., has demonstrated a conscious disregard for the rights and safety of Plaintiff, and others equally situated, and this conscious disregard entitles Plaintiff to a recovery of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## COUNT VI
## ATTORNEY'S FEES

62.

Plaintiff re-affirms and re-alleges all the preceding paragraphs of this Complaint as if fully set forth herein.

63.

Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff

unnecessary trouble and expense.

64.

Accordingly, Plaintiff is entitled to recover attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff Robert Lang prays for the following relief:

1) That he recover of Defendant special damages, including medical expenses incurred by him, past and future, in an amount to be proven at trial;

2) That he recover of Defendant general damages, including pain and suffering, in an amount based upon the enlightened conscience of a fair and impartial jury;

3) That he recover of Defendant pre-judgment interest as provided by law;

4) That he recover of Defendant punitive damages based on Defendant's conscious indifference to the consequences of its actions;

5) That he recover of Defendant his attorney's fees and expenses of litigation in an amount to be proven at trial;

6) Order Defendant to issue a recall notice or other enhanced, unambiguous warning to all purchasers of the P320 stating that the weapon can fire without a trigger pull; and

7) That he have any and all further relief that this Honorable Court deems appropriate.

Plaintiff demands a trial by jury on all counts.

This 25th day of August 2021

/s/ *Matthew P. Bonham*
Nicholas T. Protentis (Georgia Bar No. 176067)
Matthew P. Bonham (Georgia Bar No. 333759)
**PROTENTIS LAW LLC**
5447 Roswell Road NE
Atlanta, Georgia  30342
Phone: (404) 593-2460
nick@protentislaw.com
matt@protentislaw.com