# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| ROBERT LANG, | : |
| Plaintiff, | : |
| v. | : NO. 1:21-cv-04196-ELR |
| | : |
| SIG SAUER, INC., | : JURY DEMANDED |
| Defendant. | : |
| | : |

## PLAINTIFF'S OUTLINE OF THE CASE

### I. FACTUAL SUMMARY

On December 11, 2018, Plaintiff, Robert Lang, then 32 years old, was catastrophically injured when his Sig Sauer P320 pistol unintentionally discharged and a bullet struck Mr. Lang in his thigh. Just prior to the incident, Mr. Lang's P320 was in its holster and secured to his belt on his waist. As Mr. Lang began to remove the holstered pistol from his belt as one unit, the P320 discharged while it was in the holster. The bullet tore through his right upper thigh and then ripped out just above his knee. Plaintiff's wound became infected within a week of the incident and he required days of inpatient hospitalization for sepsis. Plaintiff continues to experience pain and discomfort from his injury.

The Sig Sauer P320 is a single-action, striker fired pistol. Striker fired guns generally come in two designs:

- single action, which means the gun is pre-cocked and a trigger pull simply releases the striker and fires a round, or

- double action, where the gun is not pre-cocked and a trigger pull first cocks the striker to the point where the gun is charged, or cocked, then continuing the trigger pull will release the striker and fire a round.

Sig Sauer is the first and only manufacturer, ever, to design a pre-cocked striker fired pistol without any external safeties. Every other gun manufacturer in the world that sells pre-cocked pistols includes either a manual thumb safety, a trigger safety, or both. Pre-cocked guns are already charged and cocked, and shorter and lighter trigger movements, even ones that are not intentional, will cause the gun to fire. Even the vast, vast majority of double action pistols, the uncocked pistols have a thumb safety or trigger safety or both to protect its users.

Plaintiff contends that the P320 is defectively and negligently designed because of its short single-action trigger pull and absence of a tabbed trigger safety. At trial, Plaintiff's claims are based upon Defendant's failure to incorporate a tabbed trigger on the P320.[1] Sig Sauer did not make a single version of the P320 which incorporated a tabbed trigger safety and the vast majority of P320s did not offer any external safety as an option.

---

[1] Plaintiff's claims regarding the need for a thumb safety were precluded by this Honorable Court's ruling on Defendant's motion for summary judgment.

## II. Plaintiff's Theories of Liability and Applicable Law

### A. Strict Liability

To state a strict products liability claim under Georgia law, the plaintiff must show that: (1) the defendant was the manufacturer of the product; (2) the product, when sold, was defectively designed and/or not merchantable and reasonably suited to the use intended; and (3) the product's defective condition proximately caused plaintiffs injury. O.C.G.A. § 51-1-11(b)(1). Under Georgia law, a product design is defective if "the risks inherent in a product design [outweigh] the utility or benefit derived from the product." In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig., 711 F. Supp. 2d 1348, 1364–65 (M.D. Ga. 2010)(citing *E.g., Dean v. Toyota Indus. Equip. Mfg., Inc.,* 246 Ga.App. 255, 259, 540 S.E.2d 233, 237 (2000)).

The factors relevant to the risk-utility analysis include: the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger, and the user's ability to avoid danger; the state of the art at the time the product is manufactured; the manufacturer's ability to eliminate the danger without impairing the product's usefulness or making it too expensive; and the feasibility of spreading the loss in the price or by purchasing insurance. In re Mentor Corp, 711 F. Supp. 2d at 1364–65. "The most important

factor, [ ] is whether the design chosen was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware-this factor is the "heart" of design defect cases." Id. (citations omitted).

Here, Plaintiff contends that the Sig Sauer P320 was defectively designed because of its short single-action trigger pull and absence of a tabbed trigger safety. Use of a tabbed trigger would make the inherent danger of the P320 avoidable. Users of the product are unaware of the risk posed by absence of a tabbed trigger on the single-action design of the P320. Sig Sauer provided no warnings of the inherent danger imposed by this design choice. To the contrary, they promised the gun would not fire unless the user wanted it to. The tabbed trigger could have been added to eliminate the danger without impairing the usefulness or cost of the P320. Sig Sauer's chosen design choice, foregoing the tabbed trigger, was not reasonable considering the risk and that every other single action pistol every marketed contained an external safety like a tabbed trigger.

### B. <u>Negligence</u>

Plaintiff's Negligence count, Count I, contains two negligence-based causes of action: one for the negligent sale of a defective product and the other for negligent failure to warn of the product's dangers. In Georgia, these are distinct causes of action because they implicate separate duties that product manufacturers owe their customers. Edwards v. Wisconsin Pharmacal Co., LLC, 987 F. Supp. 2d 1340, 1344

(N.D. Ga. 2013)(citing Chrysler Corp. v. Batten, 264 Ga. 723, 450 S.E.2d 208, 211 (1994). The elements of these causes of action are otherwise the same. Edwards, 987 F. Supp. 2d at 1344.

To recover for a negligence claim, the plaintiff must establish (1) a legal duty of the defendant; (2) breach of that duty; (3) damages; and (4) a causal connection between the defendant's breach and the plaintiff's damages. Id. Under Georgia law, product manufacturers have a duty to exercise reasonable care in manufacturing their products so that they are reasonably safe for their intended and foreseeable uses and to warn the public of those damages arising from their products' use about which they know or reasonably should know. Batten, 450 S.E.2d at 211.

Sig Sauer owed Plaintiff the duty - before selling the gun and placing it into the stream of commerce - to design the P320 weapon in such a manner and with the exercise of reasonable care, so as to prevent it from firing without an intentional trigger pull. Plaintiff contends that Sig Sauer knew or had reason to know that the P320 posed an unreasonable risk of harm of discharging without an intentional trigger pull by virtue of informal and formal claims arising from substantially similar incidents, internal testing and research, and other sources of information. Thus, Sig Sauer also owed a duty to unambiguously warn consumers and/or intended users (including Plaintiff) of the P320 of known or suspected defects that rendered the gun unreasonably dangerous to handle or use.

Specific acts of Sig Sauer's negligence include:

a) failing to use due care in designing and manufacturing the P320 so as to prevent unintended discharges;

b) failing to use due care in designing and manufacturing the P320's internal components, including its sear, and by omitting a mechanical disconnect switch, so as to prevent unintended d discharges;

c) failing to issue a mandatory recall of the P320 as Sig Sauer had done in the past with other defective products;

d) failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the gun's propensity to discharge spontaneously as described above;

e) failing to unambiguously warn purchasers and end users of the gun of said defective, hazardous and unreasonably dangerous conditions relating to its design and manufacture, which it knew or should have known about through the exercise of ordinary care;

f) failing to discover the defective conditions relating to the gun's propensity to randomly discharge while in the possession of Sig Sauer, and during which times employees, servants or agents of Sig Sauer had an opportunity to inspect, service and work on the gun.

## C. **Breach of Warranty**

Pursuant to O.C.G.A. § 11-2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "When a defect in the product exists, the manufacturer and seller are liable strictly in warranty, without evidence of fault or knowledge, where the breach of warranty conditions are satisfied." McDonald v.

Mazda Motors of Am., Inc., 269 Ga. App. 62, 65, 603 S.E.2d 456, 459–60 (2004)(citing OCGA § 11–2–314; John Deere Co. v. Lindsey Landclearing Co., 122 Ga.App. 827, 831(2), 178 S.E.2d 917 (1970)).

Sig Sauer was in the business of marketing, selling, and distributing weapons, including Plaintiff's P320 pistol. Sig Sauer knew of the purposes and way the gun was used and handled and impliedly warranted it to be of merchantable quality, safe, and fit for such purposes. In Sig Sauer's marketing materials for the P320, Sig Sauer expressly warranted to its consumers: "We've designed safety elements into every necessary feature on this pistol. From the trigger, to the striker and even the magazine, the P320 won't fire unless you want it to."

Plaintiff contends that Sig Sauer breached the warranties as to the gun because, at the time it left Sig Sauer's possession, it was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended.

## III. DAMAGES CLAIMED

A. Plaintiff claims general damages for past and future physical pain, suffering, disability, emotional and mental anguish, permanent impairment, and disfigurement in an amount to be determined by the Jury. As a result of the unintended discharge of Plaintiff's P320, Plaintiff was shot. The bullet tore through his right upper thigh and then ripped out just above his knee. Plaintiff's wound became infected within a week of the incident and he required days of inpatient hospitalization for sepsis. Plaintiff continues to experience symptoms from his injury. Plaintiff intends to use a "unit of time" argument regarding computation of damages during Plaintiff's summation.

B. Plaintiff seeks compensatory damages for past medical expenses.

| | |
|---|---|
| American Medical Response EMS | $1,316.44 |
| Wellstar North Fulton Hospital | $40,105.00 |
| Resurgens Orthopaedics | $1,637.42 |
| Infectious Disease Services | $6,418.68 |
| Emergency Room Physician Charges | $1,504.00 |

C. Plaintiff seeks compensatory damages for future medical expenses in the amount of $323,649.00 as outlined in the expert report of Varsha Desai.

D. Plaintiff seeks compensatory damages for $719.95, the amount he spent on the defective P320.

E. Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1.

Respectfully submitted,

SALTZ MONGELUZZI & BENDESKY, P.C.

By: */s/ Robert Zimmerman*
ROBERT W. ZIMMERMAN
*Attorneys for Plaintiffs*
(*Admitted Pro Hac Vice*)

Dated: November 30, 2023

PROTENTIS LAW LLC

By: /s/ Matthew P. Bonham
NICHOLAS T. PROTENTIS
(Georgia Bar No. 176067)
MATTHEW P. BONHAM
(Georgia Bar No. 333759)

5447 Roswell Road NE
Atlanta, Georgia 30342
Phone: (404) 593-2460
nick@protentislaw.com
matt@protentislaw.com