# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ROBERT LANG, | : |
| Plaintiff, | : |
| | : NO. 1:21-CV-00441-MJT |
| v. | : |
| | : |
| SIG SAUER, INC., | : JURY DEMANDED |
| Defendant. | : |
| | : |

## ATTACHMENT "D"

## DEFENDANT SIG SAUER, INC.'S OUTLINE OF THE CASE

The following is SIG Sauer's outline of the case prepared pursuant to Local Rule 16.4(B)(15).

### I.     Relevant Facts

Plaintiff Robert Lang claims he was injured when he accidentally discharged a round from his SIG Sauer P320 model pistol into his right thigh. The accident occurred on December 11, 2018 while Plaintiff was in the process of removing his holstered pistol from his belt. Plaintiff claims that he put his thumb on top of the slide and as soon as his finger touched the clip that attached his holster to his belt, the pistol discharged. Plaintiff testified that the pistol fired without the trigger being pulled, but both of Plaintiff's expert witnesses have opined that the P320 pistol can only fire with trigger actuation.

Plaintiff's liability experts, James Tertin and William Vigilante, claim that the P320 model pistol is defective because it was designed without a tabbed trigger. A tabbed trigger is a form of passive safety designed to protect against accidental discharges that may occur when pistols equipped with *unbalanced* trigger mechanisms are dropped onto a hard surface. Because the P320 has a *balanced* trigger mechanism, it does not need a tabbed trigger to prevent it from firing when dropped. Plaintiff does not contend that there is a relevant drop-safety concern involving his P320 that would have been ameliorated by the presence of a tabbed trigger, which he concedes did not discharge as a result of being dropped or impacted. Rather, Plaintiff claims that a tabbed trigger would have prevented him from accidentally pulling the trigger on his P320.

SIG Sauer contends that the P320 model pistol is safe as designed and that Plaintiff has not adduced any evidence that a tabbed trigger would have prevented him from accidentally pulling the trigger. Specifically, the P320 does not require a tabbed trigger because it is equipped with a balanced trigger mechanism that is drop safe without one. With regard to causation, SIG Sauer contends that a tabbed trigger would not have prevented Plaintiff's accident because tabbed triggers are designed to be disengaged without any additional effort when the trigger is pulled, as it was here. Plaintiff's suggestion that a tabbed trigger would have prevented his discharge

relies on a baseless assumption that his finger only contacted the very edge of the trigger. There is no evidence to support this theory, which was developed by Plaintiff's counsel without regard to Plaintiff's own description of how the discharge occurred. Indeed, Plaintiff testified that he did not touch the trigger and both of his liability experts, James Tertin and William Vigilante, admit they do not know what contacted the trigger or where on the trigger the contact that led to the discharge was made. As a result, not only will Plaintiff be unable to show that the design of the P320 was defective without a tabbed trigger, Plaintiff has no evidence whatsoever to support his litigation theory that a tabbed trigger would have prevented him from accidentally discharging his pistol.

## II. Relevant Legal Authority

*A. Strict Product Liability:* Under Georgia's statutory strict liability standard, a manufacturer may only be held strictly liable if its product had a design, manufacturing, or warning defect at the time it was sold that proximately caused a plaintiff's injury. O.C.G.A. § 51-1-11(b)(1). A risk-utility test is used to determine whether a product was defectively designed. *See Banks v. ICI Ams., Inc.*, 450 S.E.2d 671, 674 (Ga. 1994). The factors to be considered in applying Georgia's risk-utility test include: "the usefulness of the product; the gravity and severity of the danger

posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate the danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance." *Id.* at 675, n. 6.

**B. Causation:** The plaintiff asserting a product liability cause of action, whether sounding in strict liability negligence, or breach of warranty, must prove a causal connection between the injuries he sustained and the alleged product defect. *Carmical v. Bell Helicopter Textron, Inc., a Subsidiary of Textron, Inc.*, 117 F3d 490, 494 (II) (11th Cir. 1997) ("To prevail in a Georgia products liability action, whether based on negligence or strict liability, a plaintiff must show that the proximate cause of the injury was a defect which existed when the product was sold"); *Maynard v. Snapchat, Inc.*, 313 Ga. 533, 538 (2), 870 S.E.2d 739 (2022) ("In addition to proving that a product was defectively designed, a plaintiff seeking to hold a manufacturer liable for a design defect must show that the defect proximately caused the plaintiff's injury."); *Talley v. City Tank Corp.*, 158 Ga. App. 130, 134 (3),

279 S.E.2d 264 (1981) ("Whether proceeding under a strict liability or a negligence theory, 'proximate cause' is a necessary element of [a plaintiff's] case."). A plaintiff in a complex design case must establish causation through the opinion testimony of an expert witness. *See Haynes v. Cyberonics, Inc.*, No. 1:09-CV-2700-JEC, 2011 WL 3903238, at *6 (N.D. Ga. Sept. 6, 2011) ("Proof of causation in a products liability case generally requires reliable expert testimony which is based, at the least, on the determination that there was a reasonable probability that the negligence caused the injury.").

***C. Punitive Damages:*** Punitive damages claims are governed by statute. *See* O.C.G.A. § 51-12-5.1. "Punitive damages are only awarded in tort actions in which a plaintiff proves by clear and convincing evidence that the defendant's misconduct was willful, malicious, fraudulent, wanton, oppressive, or exhibited a want of care which would raise the presumption of conscious indifference to consequences." *Williams v. Tristar Prods., Inc.*, 418 F. Supp. 3d 1212, 1230 (M.D. Ga. 2019) (citing O.C.G.A. § 51-12-5.1(b)). "A party's negligence, even gross negligence, is insufficient to support an award of punitive damages." *Id.*